Jonathan Vasquez
2820 Valley View Rd,
Hollister, CA 95023
Telephone: (931) 809-0219
Email: jevasqu4@asu.edu
Plaintiff in Pro Se

FILED (5)
AUG 07 2026 MG NP
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| JONATHAN VASQUEZ,<br><br>*Plaintiff,*<br><br>v.<br><br>MONICA STONER, individually;<br>HON. JULIE A. EMEDE, in her official and administrative capacity as Presiding Judge of the Superior Court of California, County of Santa Clara;<br>MICHELLE "SHELLEY" CURRAN, in her official capacity as Administrative Director of the Judicial Council of California; and DOES 1–10, inclusive,<br><br>*Defendants.* | Case No. C 26 08222 VKD<br><br>**COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS, DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF**<br><br>42 U.S.C. § 1983<br>28 U.S.C. §§ 2201–2202<br>First Amendment — Retaliation<br>Fourteenth Amendment — Due Process<br>Fourteenth Amendment — Equal Protection<br><br>**JURY TRIAL DEMANDED**<br><br>Underlying State Matter: Santa Clara County Superior Court No. 17CP000714, Vasquez v. McGrew |

4

**PRIVACY PROTECTION (Fed. R. Civ. P. 5.2).** The minor child who is the subject of the underlying state proceeding is identified throughout only by the initials "A.M." in compliance

with Fed. R. Civ. P. 5.2(a)(3). Every exhibit has been redacted to remove her full name, date of birth, school identifiers, medical record numbers, and therapy records. Plaintiff will lodge unredacted copies under seal on application. Plaintiff's residential address is omitted and will be supplied to the Clerk separately.

## I. NATURE OF THE ACTION

1. This action has two halves, and they are pleaded against different defendants for different relief.

2. The first half seeks damages from one person. Monica Stoner, the attorney appointed to represent Plaintiff's daughter under California Family Code § 3150, procured a signed court order by concealing from the signing judicial officer a written objection that she had solicited, received, and was obliged to place before the court. She also initiated the emergency screening that ended Plaintiff's sole physical custody eight days after Plaintiff filed a misconduct complaint against her with the State Bar of California. Those are claims about her conduct, not about any order, and they are brought against her in her individual capacity alone.

3. The second half seeks no damages from anyone. It challenges a written, published administrative policy of the Superior Court of California, County of Santa Clara, under which official court reporters are not provided in family law custody proceedings and litigants are told instead that they may retain one "at the party's own expense." Plaintiff could not pay. The consequence is that eight hearings across twelve months, in which his fundamental liberty interest in the care and custody of his child was adjudicated, produced no verbatim record of any kind — no transcript of what was said to the judge, no transcript of what the judge said, nothing. That challenge is brought against two state officers in their official capacities, for prospective declaratory and injunctive relief only.

4. Plaintiff does not ask this Court to review, vacate, modify, enjoin, or declare erroneous any order of the Santa Clara County Superior Court. He accepts every state order as entered. He does not seek custody of A.M. from this Court and does not seek modification of any custody or visitation schedule. He seeks damages from a private actor and a forward-looking correction to a court policy.

5. The two halves are connected by a single fact. A regime in which one participant supplies the operative characterizations, is never sworn, is never cross-examined, files no declaration under penalty of perjury, drafts the court's own orders, and transmits them directly to chambers — in proceedings that generate no record at all — is a regime in which the conduct alleged in the first half is not merely possible but structurally undetectable. The policy did not cause Ms. Stoner to do what she did. It made it impossible for anyone to find out.

6. Plaintiff proceeds pro se and asks that this Complaint be construed under Erickson v. Pardus, 551 U.S. 89, 94 (2007), and Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

## II. JURISDICTION, VENUE, SOVEREIGN IMMUNITY, AND THE BOUNDARIES OF RELIEF

### A. Subject matter jurisdiction and venue

7. This Court has jurisdiction under 28 U.S.C. § 1331 and § 1343(a)(3)–(4). Declaratory relief is authorized by 28 U.S.C. §§ 2201–2202. No state-law claim is pleaded and Plaintiff does not invoke 28 U.S.C. § 1367.

8. Venue lies under 28 U.S.C. § 1391(b)(1) and (b)(2): all Defendants perform their official functions in Santa Clara County, and substantially all acts and omissions alleged occurred there. Under Civil L.R. 3-2(c) and (e), assignment to the San Jose Division is proper.

### B. Why the County of Santa Clara is not a defendant

9. Plaintiff has not named the County of Santa Clara. California superior courts are arms of the State, not of any county. Greater Los Angeles Council on Deafness v. Zolin, 812 F.2d 1103, 1110 (9th Cir. 1987); Simmons v. Sacramento County Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003). The Lockyer-Isenberg Trial Court Funding Act of 1997, Cal. Gov't Code § 77000 et seq., transferred responsibility for trial court funding and administration from the counties to the State. The administrative practices challenged in Counts III and IV are practices of a state court, and no municipal liability theory under Monell v. Department of Social Services, 436 U.S. 658 (1978), is or could be asserted.

### C. The Eleventh Amendment, and why the official-capacity claims survive it

10. Plaintiff does not name the State of California, the Judicial Council of California, or the Superior Court itself. He understands that the Eleventh Amendment bars suit against a State in federal court and that a State is not a "person" within the meaning of 42 U.S.C. § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

11. Defendants Emede and Curran are named solely in their official capacities and solely for prospective declaratory and injunctive relief. Ex parte Young, 209 U.S. 123 (1908), permits exactly this. A state official sued in an official capacity for prospective relief is a "person" under § 1983. Will, 491 U.S. at 71 n.10. The inquiry is "straightforward": whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. Verizon Maryland Inc. v. Public Service Commission, 535 U.S. 635, 645 (2002).

12. Plaintiff seeks no damages, no restitution, no fees, and no other retroactive relief from Defendants Emede or Curran, and no relief payable from the treasury of the State of California. Edelman v. Jordan, 415 U.S. 651, 664–68 (1974).

13. Each official-capacity Defendant has the requisite connection to enforcement of the challenged policy. Under California Rule of Court 10.603, the presiding judge of a superior court has general responsibility for and supervision over the court's administrative operations,

including the allocation of court resources. Under California Rule of Court 10.80 and the Judicial Council's constitutional rulemaking authority, Cal. Const. art. VI, § 6, the Administrative Director implements council policy governing trial court operations, including the reporting of proceedings under California Rule of Court 2.956 and Cal. Gov't Code § 68086.

**D. Why judicial immunity does not bar the official-capacity claims**

14. Absolute judicial immunity protects judicial acts. It does not protect administrative acts. Forrester v. White, 484 U.S. 219, 227–29 (1988) (immunity is determined by "the nature of the function performed, not the identity of the actor who performed it"; a judge's employment decision was administrative and unprotected). Accord Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435–36 (1993).

15. The policy challenged in Counts III and IV is not a ruling in any case. It is a court-wide resource-allocation policy, adopted effective a date certain, published on the court's public website, and applied to every family law litigant in the county without reference to the facts of any case. Establishing and maintaining it is quintessentially administrative.

16. The same distinction disposes of the 1996 amendment to § 1983, which bars injunctive relief "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity" unless a declaratory decree was violated or declaratory relief was unavailable. Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 309(c). Because the challenged act is administrative rather than judicial, the bar does not apply by its own terms. In any event, the amendment does not restrict declaratory relief, which Plaintiff seeks independently and as his primary prospective remedy. Injunctive relief is sought in the alternative.

17. No judicial officer is named in a personal capacity, and Plaintiff seeks no damages from any judge. The judicial officers who presided in the underlying matter — the Honorable Peter H. Kirwan (Department 75), the Honorable Christine Garcia-Sen (Department 76), and the Honorable Thomas E. Kuhnle — are not defendants. They are identified only because what they were told, and what they were not told, is the factual core of Counts I and II. Plaintiff does not allege that any of them was biased, and pleads no such claim.

**E. Standing for prospective relief**

18. Case No. 17CP000714 remains open. A.M. is ten years old. Plaintiff remains a party to a family law matter in which custody, visitation, and Minor's Counsel fee applications continue to be litigated and in which further hearings will be set. He remains without means to retain a private court reporter.

19. Plaintiff therefore faces a real and immediate — not conjectural or hypothetical — prospect of appearing at future hearings in the same court, before the same policy, with the same result: a proceeding affecting his parental rights that produces no verbatim record. City of Los Angeles v.

Lyons, 461 U.S. 95, 105–06 (1983). The injury is not the past absence of a transcript; it is the certainty of its recurrence under a policy that remains in force today.

**F. Rooker-Feldman does not apply**

20. Rooker-Feldman reaches only "cases brought by state-court losers complaining of injuries caused by state-court judgments… and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005). The Ninth Circuit requires both that the complaint assert injury from "legal error or errors by the state court" and that it seek "relief from the state court judgment." Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004).

21. Neither element is present. Plaintiff alleges no legal error by any judicial officer; he alleges acts by Ms. Stoner and a policy of the court as an institution. He seeks no relief from any judgment. "[A] plaintiff alleging extrinsic fraud on a state court presents an independent claim." Id. at 1141. This is the posture in which the Ninth Circuit held Rooker-Feldman inapplicable in Benavidez v. County of San Diego, 993 F.3d 1134, 1142–43 (9th Cir. 2021), where parents alleged that officials "knowingly submitted false information to the state court" and did so "without affording Plaintiffs any opportunity to respond or be heard and without informing the state court that this was the case."

22. The exception recognized in Reusser v. Wachovia Bank, N.A., 525 F.3d 855, 859–60 (9th Cir. 2008) — under which Rooker-Feldman does apply where objections to a fraudulently obtained judgment were in fact presented to and rejected by the state court — has no application. Plaintiff's July 16, 2024 objection was never presented to the state court at all. That is the injury.

**G. The domestic relations exception and Younger**

23. The domestic relations exception withholds federal power only "to issue divorce, alimony, and child custody decrees." Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992). It construes the diversity statute and does not apply to federal-question cases. Id. at 700. Plaintiff asks this Court to issue no decree of any kind concerning A.M.

24. Younger abstention is confined after Sprint Communications, Inc. v. Jacobs, 571 U.S. 69, 78 (2013), to state criminal prosecutions, civil enforcement proceedings akin to criminal prosecutions, and civil proceedings involving orders uniquely in furtherance of state courts' ability to perform their judicial functions. A private custody dispute is none of these. Independently, Younger does not authorize dismissal of a damages claim; the remedy at most is a stay. Gilbertson v. Albright, 381 F.3d 965, 981 (9th Cir. 2004) (en banc). And the prospective relief sought here is directed at an administrative policy of general application, not at any ruling in Plaintiff's pending matter.

**H. Timeliness**

25. Section 1983 borrows California's two-year personal-injury period. Cal. Code Civ. Proc. §

335.1. Accrual is governed by federal law: a claim accrues when the plaintiff knows or has reason to know of the injury. Wallace v. Kato, 549 U.S. 384, 388 (2007); Belanus v. Clark, 796 F.3d 1021, 1025 (9th Cir. 2015).

26. Count I accrues on **August 9, 2024**, the date the concealed objection produced a signed order. No enforceable written order embodying the June 25, 2024 rulings existed before that date, and the deception was not complete — and inflicted no cognizable injury — until the deceived court acted.

27. Defendant Stoner took further discrete acts affecting Plaintiff within the limitations period: service of the Minor's Counsel Information Bill on August 20, 2024; Application for Payment No. 7 on August 21, 2024; Application No. 6 AMENDED on October 18, 2024; an invoice letter on December 27, 2024; a payment demand on January 6, 2025; and Application No. 8 on May 7, 2025. Each is independently timely.

28. Conduct in 2023 and the first half of 2024 is pleaded (a) as component acts of a single continuing course of conduct extending through May 7, 2025, and (b) as background evidence of intent, pattern, and practice, admissible regardless of independent actionability. National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

29. In the alternative, Plaintiff pleads delayed discovery as to the undisclosed organizational relationship described in Section VII, which he learned of only through his own research of public records and which neither Defendant Stoner nor the court disclosed; and equitable tolling under McDonald v. Antelope Valley Community College District, 45 Cal.4th 88, 102 (2008), based on his pursuit of the same operative facts before the State Bar of California from July 16, 2023 and before the state court by Request for Order filed February 29, 2024, of both of which Defendant Stoner had actual notice.

30. Counts III and IV challenge a policy in force today. A claim for prospective relief against an ongoing policy is not barred by the passage of time since the policy was adopted.

31. A limitations defense may be resolved on the pleadings only where the bar appears on the face of the complaint and no tolling is possible. Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206–07 (9th Cir. 1995).

**III. PARTIES**

32. Plaintiff JONATHAN VASQUEZ is an adult resident of California and the father of A.M., born in 2016. He was a self-represented party in Santa Clara County Superior Court Case No. 17CP000714 and appeared without counsel at every hearing described below.

33. Defendant MONICA STONER is an attorney licensed by the State Bar of California, Bar No. 277041, practicing as the Law Office of Monica Stoner, P.O. Box 5024, San Jose, California 95150. By order of the Santa Clara County Superior Court she was appointed Minor's Counsel for A.M. under California Family Code § 3150 and served continuously throughout the period

described. She is sued in her individual capacity, and Official Capacity.

34. Defendant HON. JULIE A. EMEDE is the Presiding Judge of the Superior Court of California, County of Santa Clara, having assumed that office on January 1, 2025. She is sued solely in her official and administrative capacity and solely for prospective declaratory and injunctive relief. No damages are sought from her. No ruling she has made in any case is challenged. Her successor in office is automatically substituted under Fed. R. Civ. P. 25(d).

35. Defendant MICHELLE CURRAN, who also uses the name Shelley Curran, is the Administrative Director of the Judicial Council of California, having assumed that office on January 1, 2024. She is sued solely in her official capacity and solely for prospective declaratory and injunctive relief. No damages are sought from her and no relief is sought from the treasury of the State of California. Her successor in office is automatically substituted under Fed. R. Civ. P. 25(d).

36. Defendants DOES 1–10 are persons whose identities are presently unknown, including the Court Executive Officer of the Superior Court of California, County of Santa Clara, and other non-judicial administrative officers responsible under California Rule of Court 10.610 for the court's operations, including the provision of reporting services. Plaintiff will amend to substitute true names when ascertained.

37. Alyssa McGrew is A.M.'s mother and was a party to the state proceeding. She is not a defendant. Joshua Kerswell is Ms. McGrew's husband. He is not a defendant. Both are identified only because their conduct forms part of the factual record that Defendant Stoner conspired with, and the manner of that evaluation is a subject of this action.

## IV. DEFENDANT STONER ACTED UNDER COLOR OF STATE LAW

38. Plaintiff is aware of Kirtley v. Rainey, 326 F.3d 1088 (9th Cir. 2003), holding that a guardian ad litem appointed to represent a child does not, by virtue of the appointment alone, act under color of state law. Plaintiff does not rely on the appointment alone. Kirtley rested expressly on the observation that the statutory roles of a guardian ad litem "have never been held to be traditional or exclusive governmental functions." Id. at 1093. Plaintiff alleges conduct outside those statutory roles.

### A. Public function — composing and transmitting the court's orders

39. Defendant Stoner drafted the court's own Findings and Orders After Hearing and transmitted them directly to the judicial officer's chambers for signature on at least June 16, 2023, July 17, 2023, August 29, 2023, December 19, 2023, and July 15, 2024. On June 16, 2023 she enclosed "a cover letter explaining my process for submitting it." On December 19, 2023 she wrote to the Department 75 clerk: "Please accept the attached proposed FOAH for the Court's review and (if acceptable) signature."

40. Composing the written order of a court and transmitting it to chambers is a function

traditionally and exclusively reserved to the State. Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). It appears nowhere in California Family Code §§ 3150–3153 or California Rule of Court 5.242. In a proceeding with no reporter, the order she drafted became the only surviving record of what the court decided, and there was nothing against which to check the judical deceit.

**B. Joint action — an exclusive channel to chambers**

41. A private party acts under color of state law when she is "a willful participant in joint action with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27 (1980). Joint action requires an agreement or meeting of the minds, which may be inferred from conduct. Crowe v. County of San Diego, 608 F.3d 406, 440 (9th Cir. 2010); Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999).

42. Defendant Stoner corresponded directly and repeatedly with the presiding judge's courtroom clerk. She requested and obtained the bench referral that set the August 24, 2023 screening and asked that it be advanced to an earlier date. She transmitted her own document package directly to fcsscreenings@scscourt.org before that screening. She did so while serving as an officer of the same professional organization in which the presiding judge held office, a relationship neither disclosed. Plaintiff, a party, had no comparable channel.

**C. Governmental nexus**

43. Defendant Stoner was appointed by the court, compensated under California Family Code § 3153 by orders the court entered on her own applications on local form FM-1067, and subject to qualification, training, and continuing-education requirements imposed by California Rule of Court 5.242. In the operation of the family law division she was the instrument through which information about a child reached judicial officers.

**D. Immunity does not reach the conduct alleged**

44. Pleaded in the alternative: if Defendant Stoner is found to have acted under color of state law, the conduct at issue nonetheless falls outside any function to which absolute quasi-judicial immunity attaches. Immunity protects the function; it does not protect deception in the procurement of an order. "[T]he fabrication of evidence" is not a "discretionary, quasi-prosecutorial decision." Beltran v. Santa Clara County, 514 F.3d 906, 908 (9th Cir. 2008) (en banc). Accord Miller v. Gammie, 335 F.3d 889, 898 (9th Cir. 2003) (en banc); Hardwick v. County of Orange, 844 F.3d 1112, 1115 (9th Cir. 2017); Rieman v. Vazquez, 96 F.4th 1085, 1094 (9th Cir. 2024).

**V. THE CHALLENGED POLICY: NO VERBATIM RECORD IN FAMILY LAW CUSTODY PROCEEDINGS LED TO THE DEPRIVATION OF RIGHTS**

45. The Superior Court of California, County of Santa Clara, maintains and publishes on its official website a policy captioned "Official Court Reporter Availability." It has been in force since a date certain and remains in force today. It is an administrative policy of general

application. It resolves no case and adjudicates no dispute.

46. The policy provides that, effective October 13, 2020, the court will provide court reporters in enumerated categories of "mandated proceedings," specifically: felony criminal; juvenile dependency; juvenile justice; Lanterman-Petris-Short Act; contempt in civil and family matters; a short list of family court matters in which a reporter is statutorily mandated, given as requests to withdraw consent to an adoption, child testimony in chambers, and petitions to free a minor from parental care and control; and "cases in which an official court reporter is required by the Supreme Court opinion in the case of Jameson v. Desta."

47. Custody and visitation proceedings under the Family Code are not among the enumerated categories. The policy addresses them in its second paragraph, which provides that for "family court matters not listed above… or any other hearings for which the court does not provide an official reporter, a party has the right to arrange, at the party's own expense, for the services of a court reporter."

48. The policy directs that a party wishing to do so must arrange a privately retained reporter in advance and file a Request for Appointment of Official Reporter Pro Tempore, local form CV-5100. The court separately publishes a "Policy Regarding Privately Retained Court Reporters" setting qualification requirements.

49. The structure of the policy is therefore: in a custody proceeding, a litigant who can pay obtains a verbatim record, and a litigant who cannot pay obtains none. Plaintiff could not pay. He obtained none — not at one hearing, but at every hearing, over twelve months, before two judicial officers. It's a policy that discriminates against poorer litigants creating a two class system.

50. California Government Code § 69957 restricts the use of electronic recording as an official record in these proceedings. Plaintiff does not challenge that statute and seeks no relief against it. He challenges the policy choice, made by the court and within the court's power to change, to provide no official reporter in custody proceedings while permitting privately retained ones.

51. In Jameson v. Desta, 5 Cal.5th 594 (2018), the California Supreme Court held invalid a superior court policy that provided no official reporter in a category of civil proceedings while permitting parties to retain reporters privately, because it denied fee-waiver litigants the verbatim record necessary for meaningful review. The court observed that the absence of a record is "frequently fatal" to a litigant's ability to obtain review. The challenged policy names Jameson but confines its application to an undefined subset of cases, and does not extend it to family law custody proceedings.

52. Plaintiff alleges that the interest at stake in a custody proceeding, a parent's fundamental liberty interest in the care, custody, and management of his child, Santosky v. Kramer, 455 U.S. 745, 753 (1982) is at least as weighty as the pecuniary interests in the civil cases to which the

enumerated categories apply, and that no legitimate justification supports supplying a record in a contempt proceeding within a family case while withholding it from the custody determination in the same case.

## VI. FACTUAL ALLEGATIONS

### A. The 2022 baseline

53. On August 14, 2022, Alyssa McGrew contacted law enforcement and reported domestic violence and child abuse involving Joshua Kerswell. On or about August 15, 2022 — the following day — she filed a document with the Santa Clara County Superior Court representing that Mr. Kerswell was not a danger to A.M. Plaintiff states these two facts in sequence and characterizes neither.

54. On or about September 7, 2022 the court declined to find that Mr. Kerswell posed a danger to A.M. and denied Plaintiff's safety motion. Plaintiff does not ask this Court to review that ruling and does not contend it was wrong when made. He identifies it because no later decision-maker revisited it; from that date it operated as a settled premise rather than a determination made on a particular record.

### B. The appointment, and a first screening that favored Plaintiff

55. Defendant Stoner was appointed in or about March 2023 and first corresponded with Plaintiff on or about March 10, 2023. Between March 15 and March 22, 2023 Plaintiff provided her with child welfare records, a police report, emergency screening declarations, an evaluation by Dr. Kerner, and Mr. Kerswell's criminal court face sheet showing how dangerous the situation was with AM household. Defendant Stoner was provided CPS social worker contact information, all of which was ignored, which set the foundation for what was to come.

56. On March 22, 2023 at 11:53 p.m. Plaintiff emailed the court, Defendant Stoner, and Ms. McGrew objecting to a continuance of the domestic violence issues

57. On March 23, 2023 Defendant Stoner wrote to the department and the parties: "This action is set for a hearing this afternoon, Friday, March 23, 2023, to address the recommendations of an emergency screening." In the same communication she stated: "If Mr. Kerswell remains in the rehab program, Mother and my client are not at risk from Mr. Kerswell" — after receiving documentation that the program was voluntary, after receiving his criminal face sheet, and after her own prior acknowledgment that he "currently faces misdemeanor charges of domestic abuse against Mother."

58. The screener's recommendations favored Plaintiff. From March 23, 2023 to August 7, 2023 Plaintiff held sole physical custody of A.M. As soon as Plaintiff got Sole Custody, Defendant Stoner, started stripping the court order, citing mother best interest. Not AM like she was billing the government for.

59. On March 30, 2023 Ms. McGrew wrote to Defendant Stoner and Plaintiff: "I am filing a

complaint against the screener and will send it to you as well. I believe she didnt do her job. She listened and based all recommendations off father's schedule…" No adverse consequence followed for Ms. McGrew.

60. Defendant Stoner was appointed before the March 2023 result and remained appointed throughout the case . Her identity, statutory role, and access to the court did not change between them.

**C. The parenting-class representation, and two standards one day apart**

61. The court had ordered Ms. McGrew to complete parenting classes. At the June 23, 2023 hearing Defendant Stoner informed the court that Ms. McGrew had completed sixty hours of parenting classes before that date.

62. Plaintiff requested proof. The documents produced showed enrollment, not completion.

63. On July 12, 2023 at 7:47 p.m. — nineteen days after the court was told the classes were complete — Ms. McGrew wrote to Defendant Stoner and Plaintiff: "I have also finished my co parenting class. I need to pay the full amount to receive my certificate and I will do that as soon as I'm done giving my son a bath."

64. On July 13, 2023 — the next day — Defendant Stoner wrote to Plaintiff: "Please provide certification of your progress and/or completion of your court-ordered co-parenting class through Essence of MANA for which you enrolled on June 1, 2023." On August 22, 2023 she wrote again: "Please provide an update to me today showing proof of progress, participation, or completion of your court-ordered co-parenting class or classes."

65. The requirement was the same requirement, in the same case, administered by the same officer. As to Ms. McGrew, enrollment documentation was reported to the court as completion. As to Plaintiff, written certification was demanded twice within forty days. When Plaintiff raised the discrepancy, Defendant Stoner characterized her statement to the court as a mistake. The representation was never corrected on the record, because there was no record to correct.

**D. Protected petitioning, and the eight days after**

66. On July 12, 2023 Plaintiff wrote to Defendant Stoner reporting that Child Protective Services had appeared at his home the previous day, that he had contacted the assigned worker, and that he did not know what had prompted the referral. He noted that A.M. had been seeing her therapist weekly without reported issue.

67. Defendant Stoner replied the same day at 11:39 a.m.: "Please keep in mind that refusing to follow visitation orders today and any time in the past is legitimately concerning to any parent, as well as the Court that made the orders. Contrary to your statement that there are 'no issues' at your house, your repeated refusal to comply with Court orders for Ms. McGrew's visitation time is certainly a concerning (and possibly alarming) parenting issue."

68. On July 16, 2023 at 11:16 p.m. Plaintiff received an automated confirmation from the State

Bar of California, no.reply@calbar.ca.gov: "Thank you for submitting an attorney misconduct complaint form to the State Bar of California. Your submission reference ID number is 164." He filed the complaint in good faith on the basis of the parenting-class documents. Filing a complaint with a state disciplinary authority is protected petitioning. California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972).

69. On July 24, 2023 — eight days later — Defendant Stoner wrote to the clerk of Judge Kirwan's department: "Good Afternoon, Clerk to Judge Kirwan. I am writing to request the bench referral for the screening in case 17CP000714 (Vasquez v. McGrew), which Family Court Services reports is to be held on August…"

70. On July 25, 2023 the department replied: "The Bench referral is attached. The screening on 8/24/23 is now on the court portal. I will let the Court know you are requesting an earlier date." On July 26: "The earliest screening available is 8/16/23. Please advise if screening should be reset." On July 28: "Unfortunately, the court is not available on 8/16/23. The screening set on 8/24/23 is to remain."

71. Plaintiff did not request that screening. Defendant Stoner requested the bench referral that set it and asked that it be advanced because Plaintiff filed a State Bar Complaint because of the unethical conduct taking place by Monica Stoner. The court hearing, August 7–8, 2023, Hearing before Kirwan, Dept. 75. Stoner makes an oral representation to the court that A.V.'s therapist communicated A.V. was in danger in your care. This representation was false. No court reporter. No written documentation. Based on that oral fabrication, the court stripped your custody. That's the injury. That's the date.

August 14–15, 2023 — While your custody is stripped, Stoner emails both parents that A.V. "begins school tomorrow" at Edna Batey Elementary in Elk Grove. McGrew enrolled A.V. three hours away during the window created by Stoner's fabrication. The relocation is accomplished as a fait accompli. August 23–24, 2023, The emergency screening happens. The FCS screener interviews the therapist Stoner had cited. The therapist says A.V. was NOT in danger. The screener finds no basis. Joint custody is restored. But A.V. is already enrolled in Elk Grove. The damage is done and irreversible. As the March 2023 Screening is vacated, which protected minor child.

**E. August 24, 2023**

72. On August 23, 2023 Defendant Stoner transmitted her document package directly to fcsscreenings@scscourt.org. Plaintiff filed his Emergency Screening Declaration on August 23, 2023 and his exhibits on the morning of August 24, 2023.

73. The minute order of August 24, 2023 records "Courtroom Reporter: - No Court Reporter." It records that Family Court Services screener Cara Olney "is sworn and is examined as to her qualifications and recommendations," that "[t]he Court deems Ms. Olney as an expert," and that

her recommendations were "modified and adopted as an order of the Court, signed, and filed."

74. Plaintiff's time was reduced to Fridays 7:00 p.m. through Sundays 6:00 p.m. and Wednesdays 3:00 p.m. through 7:00 p.m.

75. No medical, dental, school, psychological, or child welfare record substantiating any allegation against Plaintiff was filed in support of that screening. No psychological evaluation of Plaintiff was ordered or conducted at any time. No custody evaluation under California Family Code § 3111 was ever conducted.

76. Defendant Stoner's written statement to the court dated April 8, 2024 later described the matters addressed as "Father's failure to meet the child's fundamental needs, including medical care, dental care, school enrollment, and age appropriate routines for sleep, exercise, and food," and "Father's choices, countless, voluminous legal actions, and profuse legal threats against [A.M.'s] caregivers, which countered the child's best interests and put Father's mental health and fitness to parent in question." The reference to "countless, voluminous legal actions" and "profuse legal threats" describes Plaintiff's filing of pleadings in his own case and his complaint about attorney conduct. Defendant Stoner did not like Plaintiff holding her accountable, so every court official she came across she told the story, of "Look, how crazy father is" to hide her judicial deceit.

77. The same April 8, 2024 statement records that A.M.'s former therapist "observed Father's parenting," and that A.M. "does not report feeling unsafe in either home."

**F. No verbatim record of anything**

78. Every hearing in this matter for which a minute order exists was conducted without a court reporter, as each minute order states on its face:

| Hearing date | Judicial officer | Dept. | "Courtroom Reporter" field |
|---|---|---|---|
| April 3, 2023 | Kirwan | 75 | - No Court Reporter |
| May 18, 2023 | Kirwan | 75 | - No Court Reporter |
| June 23, 2023 | Kirwan | 75 | - No Court Reporter |
| August 7, 2023 | Kirwan | 75 | - No Court Reporter |
| August 24, 2023 | Kirwan | 75 | - No Court Reporter |
| September 5, 2023 | Kirwan | 75 | - No Court Reporter |
| November 20, 2023 | Kirwan | 75 | - No Court Reporter |
| February 28, 2024 | Garcia-Sen | 76 | - No Court Reporter |

79. Eight hearings. Two judicial officers. Twelve months. No exception. No transcript exists of any statement Defendant Stoner made to the court, of any finding announced from the bench, or of any reasoning given for any ruling.

80. Defendant Stoner was never sworn at any hearing. The minute order of August 24, 2023 records that the screener "is sworn." The minute order of February 28, 2024 records "[b]oth parties are sworn," and in the very next line, "Ms. Stoner provides an update to the court." She never submitted a declaration under penalty of perjury setting out her recommendations, and was never cross-examined.

**G. The intercepted objection — July 15 to August 9, 2024**

81. The final contested hearing was held June 25, 2024. Defendant Stoner was designated to prepare the resulting Findings and Order After Hearing.

82. On July 2, 2024 at 12:02 p.m. she emailed the parties the proposed order and the minute order, requesting approval or comments "[p]ursuant to CRC 5.125" by July 19, 2024. Three minutes later she corrected the deadline to July 15, 2024. On July 8, 2024 she sent a reminder. By these three communications she designated herself as the recipient of comments and July 15 as the deadline.

83. On July 15, 2024 at 3:40 p.m. — the final day of the window she set — she wrote: "Please find attached the proposed Findings and Order After Hearing from the June 25, 2024 Hearing. Also attached is the Minute Order for the same. Pursuant to CRC 5.125, I have submitted them to the Court for review and signature."

84. On **July 16, 2024 at 9:21 a.m.** — the next morning — Plaintiff replied to Defendant Stoner, copying Ms. McGrew, at the address and in the manner she had designated: "My objections will noted in this email as well as a motion to vacate the orders on the following grounds 1. Fraudulent misrepresentation 2. Criminal conduct. I am asking that the better health legal team be present at the next hearing."

85. California Rule of Court 5.125 provides that where a party objects to a proposed order after hearing, the parties are to meet and confer, and the objection and any alternate proposed order are to be placed before the court along with the proposed order.

86. Plaintiff states candidly what he did and did not do. He objected in writing, by reply, to the person and in the manner designated. He did not prepare and serve an alternate proposed order, and he did not separately file the objection with the court. He was self-represented and did not understand a separate filing was required.

87. On **August 9, 2024** — twenty-four days after Plaintiff served that objection on the person preparing the order — the judicial officer signed it.

88. Plaintiff has never been provided any record showing that Defendant Stoner informed the court an objection had been served, transmitted the objection to the court, lodged it, referenced it in any communication to chambers, or contacted Plaintiff to meet and confer. He alleges on information and belief, after review of the materials available to him, that nothing reflecting his objection was lodged in Department 76 between July 15 and August 9, 2024.

89. Plaintiff does not ask this Court to vacate the August 9, 2024 order or to find its contents inaccurate. He asks this Court to take as true that an order was procured for signature by a person who had been served with a written objection accusing her of fraudulent misrepresentation and who, so far as the record shows, did not disclose that objection to the signing judicial officer.

**H. The undisclosed organizational relationship**

90. Defendant Stoner drafted and transmitted the court's orders to chambers on the occasions described in Section IV.A. On December 19, 2023 at 11:35 a.m. she emailed department75@scscourt.org, copying the parties: "I have just submitted the unsigned proposed Findings and Order After Hearing for case 17CP000714, Vasquez v. McGrew, for the hearing held November 20, 2023 in hard copy via U.S. Mail, after serving it to both parties… Please accept the attached proposed FOAH for the Court's review and (if acceptable) signature." On February 1, 2024 she transmitted the executed order to the parties.

91. Plaintiff obtained publicly available membership records of the Honorable William A. Ingram American Inn of Court, published by the American Inns of Court. The published Executive Committee roster for 2021–2022 lists Monica Stoner, Esq. as Program Chair and the Honorable Peter H. Kirwan as a Past President. The published Officers page separately lists Monica Stoner, Esq., Law Office of Monica Stoner, as Events Chair, alongside sitting judges of the Santa Clara County Superior Court.

92. Plaintiff states the relationship exactly as the public records describe it and no further. He does not allege that Defendant Stoner and Judge Kirwan held any particular pair of offices simultaneously. The documented fact is that both appear as officers of the same Inn of Court.

93. Throughout the proceeding Plaintiff asked the court to find that Minor's Counsel had misrepresented facts to it and had failed to perform the duties imposed by Family Code § 3151 and Rule 5.242. On February 29, 2024 he filed a Request for Order seeking her removal. Each such request asked the presiding judicial officer to adjudicate an allegation of professional misconduct against a person who served alongside him as an officer of his own professional organization.

94. At no time was Plaintiff informed of that relationship by Defendant Stoner, by the court, or by any other source. He learned of it through his own research of public records. Had he known, he would have raised it and sought disclosure on the record.

95. The injury pleaded is not that Judge Kirwan was biased. Plaintiff alleges no such thing and has no evidence of it. The injury is that the relationship was never disclosed, which deprived Plaintiff of the information needed to decide whether to seek disqualification or to ask that the misconduct allegations be heard elsewhere because if a party is petitioning the court to Minors Council is fabricating evidence, protecting the harm being done to a minor child, how she is disregarding domestic violence laws, a full and impartial hearing is needed. Within this action

the fact does narrow work: it supplies the ongoing relationship between Defendant Stoner and a state official that, with her exclusive channel to chambers and her authorship of the court's orders, establishes joint action under Dennis v. Sparks.

**I. The asymmetry**

96. The central factual pattern is not that a decision went against Plaintiff. It is that the same category of fact produced opposite responses depending on which parent it concerned.

97. Santa Clara County child welfare records identify Joshua Kerswell as a perpetrator in referrals dated December 13, 2016, June 7, 2017, and June 4, 2021. Those same records contain Ms. McGrew's own account that Mr. Kerswell "attempted to attack her," that he "prevented her from leaving by grabbing her and pinning her on top of the stairs, causing bruises all over her body," and that she had "called law enforcement on Mr. Kerswell about 4-5 times within the last few months." On May 10, 2023 a temporary restraining order issued in Case No. 23DV000338 naming Mr. Kerswell as the restrained party and A.M. as a protected person. On or about April 15, 2024 that order was no longer in place. Plaintiff alleges these documented facts and does not allege a specific number of arrests.

98. No emergency screening was convened, no expert was sworn, and no reduction in Ms. McGrew's parenting time was recommended on the basis of that record. An emergency screening was convened, an expert was sworn, and Plaintiff's parenting time was reduced on the basis of allegations for which no professional record was ever filed.

99. Ms. McGrew complained against the neutral screener whose recommendation favored Plaintiff; nothing followed. Plaintiff complained against Defendant Stoner; the bench referral for a screening was requested eight days later.

100. Enrollment documentation was reported to the court as completed compliance for one parent; written certification was demanded twice from the other.

101. Plaintiff pleads these paired within-case comparisons and expressly does not rely on aggregate county custody statistics, which under Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 279 (1979) would not establish purpose.

**J. The vocabulary of the record**

102. The Judicial Council of California prescribes party-neutral designations. The parties in Case No. 17CP000714 are formally Petitioner and Respondent, and the Judicial Council forms use those designations. The substantive documents generated in this case do not:

| Document | Date | "Mother"/"Father" | "Petitioner"/ "Respondent" |
|---|---|---|---|
| Minor's Counsel's Update to the Court | May 17, 2023 | 65 | 2 |
| FOAH Attachment 7, submitted to parties | Apr. 6, 2023 | 13 | 0 |

| Document | Date | "Mother"/"Father" | "Petitioner"/ "Respondent" |
|---|---|---|---|
| Minute Order (Kirwan, Dept. 75) | June 23, 2023 | 11 | 2 |
| Findings and Order After Hearing | Nov. 20, 2023 | 11 | 0 |
| Findings and Order After Hearing | May 18, 2023 | 10 | 0 |
| Minute Order (Kirwan, Dept. 75) | Nov. 20, 2023 | 7 | 3 |
| Minute Order (Kirwan, Dept. 75) | May 18, 2023 | 4 | 3 |
| Minor's Counsel's Statement | Apr. 8, 2024 | throughout | 0 |

103. Defendant Stoner's April 2024 statement opens: "Alyssa McGrew ('Mother') and Jonathan Vasquez ('Father') have one child in common." Every subsequent reference to Plaintiff in that document is to "Father."

104. Plaintiff states the significance narrowly. He does not claim the word "Father" is unlawful. He claims that the systematic substitution of a sex-defined role label for the party-neutral designation the Judicial Council prescribes is a departure from normal procedure, probative of purpose under Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 266–68 (1977). California Family Code § 3040(c) provides that a court "shall not prefer a parent as custodian because of that parent's sex."

**K. The standard, as applied**

105. Every order in this case rests on the best interest of the child standard. In no instance was that standard applied by reference to the enumerated factors of California Family Code § 3011 with findings stated as to each. In no instance was a burden of proof identified. In no instance was a standard of proof stated. In no instance was a contrary conclusion addressed and rejected with reasons.

106. The Supreme Court has confirmed that the best-interest formulation has no independent constitutional content. Reno v. Flores, 507 U.S. 292, 304 (1993). It has identified as a constitutional defect a regime placing that determination "solely in the hands of the judge" without structure. Troxel v. Granville, 530 U.S. 57, 67 (2000).

**L. Fee applications**

107. Defendant Stoner served each Application for Payment of Attorney Fees and Costs of Children's Counsel, local form FM-1067, on Plaintiff by email with the supporting invoice: No. 5 on April 25, 2024, re-sent as a "courtesy reminder" May 30, 2024; No. 6 on May 3, 2024; a Minor's Counsel Information Bill on August 20, 2024; No. 7 on August 21, 2024; No. 6 AMENDED on October 18, 2024; an invoice letter regarding the Sixth Order for Payment on December 27, 2024; a payment demand of $100 due January 10, 2025, served January 6, 2025; and No. 8 on May 7, 2025.

108. One sequencing fact appears on the face of these documents: Application No. 6 was amended on October 18, 2024, nearly two months after Application No. 7 had already been served on August 21, 2024. Plaintiff makes no allegation as to the accuracy of any individual time entry and identifies the invoices as a subject of intended discovery. Defendant Stoner was fraudulently billing the court under the guise of minors council, but her actions, told a different story.

**M. Injury**

109. Loss of parenting time. Plaintiff held sole physical custody from March 23, 2023 to August 24, 2023. His time has been reduced since while mother time inscreased on June 25, 2024 even though she was pregnant with Joshua Kerswell 2nd baby, to which she told the court she was divorcing and leaving Santa Clara County for. Joshua Kerswell and Alyssa Mcgrew had over 6 CPS investigations, 7 Arrest for Domestic Violence, Both lied to CPS, Alyssa Mcgrew lied to Judge Kuhnle, numerous police calls to family violence. They both have more custody than Plaintiff as a result of this deprivation of rights. AM is still living in a DV home.

110. Out-of-pocket costs in the state proceeding, including filing fees, service, copying and exhibit preparation, records request fees, subpoena costs, and travel, subject to itemization.

111. Lost income and lost employment opportunity attributable to time spent litigating and to disruption of Plaintiff's ability to accept positions requiring a fixed schedule.

112. Emotional distress arising from being characterized to a court, to a child welfare agency, to A.M.'s therapist, and to school officials as a parent whose "mental health and fitness to parent" were "in question," when no evaluation of him was ever conducted.

113. Reputational harm within the institutions surrounding A.M., each of which received characterizations of Plaintiff from a court-appointed officer unsupported by any filed professional record.

114. Ongoing and prospective injury from the challenged policy: Plaintiff remains a party to an open family law matter in which further hearings will be held, and remains without means to retain a private reporter.

**VII. CLAIMS FOR RELIEF**

**COUNT I**

**Judicial Deception in a Child Custody Proceeding**

**Fourteenth Amendment — 42 U.S.C. § 1983**

**(Against Defendant Stoner, individually — damages)**

115. Plaintiff incorporates each preceding paragraph.

116. There is a clearly established Fourteenth Amendment right "to be free from judicial deception and fabrication of evidence in the context of child custody cases." Benavidez v. County of San Diego, 993 F.3d 1134, 1146 (9th Cir. 2021); accord Costanich v. Department of

Social & Health Services, 627 F.3d 1101, 1108 (9th Cir. 2010).

117. The claim requires a misrepresentation or omission made knowingly or with reckless disregard for the truth, and materiality — that the order would not have issued in the same form had the truth been before the court. Benavidez, 993 F.3d at 1147–48.

118. Plaintiff pleads with the particularity required by Fed. R. Civ. P. 9(b). See Benavidez, 993 F.3d at 1150 (particularity satisfied by pleading the who, what, when, and where).

119. WHO. Defendant Monica Stoner, the attorney appointed under Family Code § 3150, who prepared the proposed Findings and Order After Hearing for the June 25, 2024 hearing and transmitted it to the court for signature.

120. WHAT. She submitted the proposed order and permitted twenty-four days to elapse to signature without disclosing to the court that Plaintiff had served a written objection on grounds of "[f]raudulent misrepresentation" and "[c]riminal conduct," by reply to the address and in the manner she had designated for comments under Rule 5.125.

121. WHEN. She submitted on July 15, 2024 at 3:40 p.m. Plaintiff served the objection on July 16, 2024 at 9:21 a.m. The court signed on August 9, 2024. The concealment operated throughout.

122. WHERE. Department 76 of the Santa Clara County Superior Court, and Defendant Stoner's email correspondence with the parties and chambers.

123. KNOWLEDGE. She had actual knowledge of the objection: it was sent to her, by reply, in the channel she created and about which she had sent three prior communications. Rule 5.125 imposed a duty to place it before the court. She had demonstrated on at least five prior occasions her practice and ability to transmit documents directly to chambers.

124. MATERIALITY. The omitted fact was that the self-represented parent objected to the order as resting on fraudulent misrepresentation. Under Rule 5.125 disclosure of an objection is what triggers the court's obligation to resolve the dispute before entry. A court told that a party has objected does not sign as a matter of course. The order fixed and reduced Plaintiff's parenting time, and issued in a proceeding with no verbatim record, no sworn statement from Defendant Stoner, and no independent source for the facts she supplied.

125. STATE OF MIND — pattern evidence. That the omission was knowing or reckless rather than inadvertent is supported by: (a) her June 23, 2023 statement that Ms. McGrew had completed sixty hours of classes, never corrected after she learned otherwise on July 12, 2023; (b) her March 23, 2023 statement that "Mother and my client are not at risk from Mr. Kerswell" after receiving documentation that his program was voluntary; (c) her demand for written certification of the identical requirement from Plaintiff twice within forty days while reporting enrollment as completion for Ms. McGrew; and (d) her supplying every operative characterization in the proceeding without oath, declaration, or cross-examination.

126. No immunity reaches this conduct, for the reasons stated in Section IV.D. Qualified

immunity does not: the right was clearly established no later than 2021, three years before the conduct. Benavidez, 993 F.3d at 1152–53.

127. As a direct and proximate result, Plaintiff suffered the injuries pleaded above.

**COUNT II**

**Retaliation for Protected Petitioning**

**First Amendment — 42 U.S.C. § 1983**

**(Against Defendant Stoner, individually — damages)**

128. Plaintiff incorporates each preceding paragraph.

129. The elements are protected activity, action that would chill a person of ordinary firmness, and the protected activity as a substantial or motivating factor. Capp v. City of San Diego, 940 F.3d 1046, 1053 (9th Cir. 2019); Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977).

130. PROTECTED ACTIVITY. Plaintiff filed an attorney misconduct complaint with the State Bar of California on July 16, 2023. "[T]he right to petition extends to all departments of the Government." California Motor Transport, 404 U.S. at 510.

131. ADVERSE ACTION. Eight days later Defendant Stoner requested from the presiding judge's clerk the bench referral that set an emergency screening, and asked that it be advanced. The screening she initiated ended Plaintiff's sole physical custody on August 24, 2023. It is clearly established that "the First Amendment prohibits public officials from threatening to remove a child from an individual's custody to chill protected speech out of retaliatory animus for such speech." Sampson v. County of Los Angeles, 974 F.3d 1012, 1019–20 (9th Cir. 2020). Action actually taken is a fortiori.

132. CAUSATION. Pleaded from the following together, not from timing alone: (a) the eight-day interval; (b) her affirmative request to advance the screening to a date earlier than the one assigned, evidencing urgency unexplained by any event in the case; (c) that the same officer, on the same appointment, had produced a result favorable to Plaintiff in March 2023, before the complaint; (d) the absence of any medical, dental, school, psychological, or agency record filed in support; (e) her contemporaneous characterization of Plaintiff's filings as "countless, voluminous legal actions" and "profuse legal threats" that "put Father's mental health and fitness to parent in question"; and (f) the substance of the complaint, which if sustained would have exposed her to professional discipline.

133. Under Mt. Healthy the burden shifts to Defendant Stoner to prove she would have acted identically absent the protected activity. That is a question of fact not resolvable on the pleadings.

134. Plaintiff separately pleads that the concealment described in Count I was itself retaliatory: its purpose and effect were to prevent his accusations against Defendant Stoner from reaching a judicial officer.

135. As a direct and proximate result, Plaintiff suffered the injuries pleaded above.

**COUNT III**

**Procedural Due Process — Adjudication of a Fundamental Liberty Interest Without Any Verbatim Record**

**Fourteenth Amendment — 42 U.S.C. § 1983; 28 U.S.C. §§ 2201–2202**

**(Against Defendants Emede and Curran, official capacity — prospective relief only)**

136. Plaintiff incorporates each preceding paragraph.

137. Parents have a fundamental liberty interest in the care, custody, and management of their children. Santosky v. Kramer, 455 U.S. 745, 753 (1982); Troxel v. Granville, 530 U.S. 57, 65 (2000).

138. The procedures due are measured under Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Santosky applies that framework to hold that the greater the imprecision of the governing substantive standard, the more procedural protection the Constitution requires, because an imprecise standard applied to a fundamental interest generates a high risk of error. 455 U.S. at 762–64.

139. The best-interest standard is committed to discretion by design and has no independent constitutional content. Reno v. Flores, 507 U.S. 292, 304 (1993). Applied here, it was administered with no stated burden of proof, no stated standard of proof, and no findings on the § 3011 factors.

140. Against that backdrop, the challenged policy withdraws the one safeguard that makes such discretion reviewable. It supplies an official reporter in enumerated categories, including contempt proceedings within family matters, and withholds one from the custody determination in the same case, offering instead only a reporter obtained "at the party's own expense."

141. The private interest is at its maximum. The risk of erroneous deprivation without a record is severe and, more importantly, undetectable: no reviewing court, and no litigant, can identify an error in a proceeding of which no account exists. The value of the additional safeguard is high and its cost is one the State already bears in other categories of case. The governmental interest in withholding it is fiscal and administrative convenience.

142. The California Supreme Court reached a parallel conclusion as a matter of state law in Jameson v. Desta, 5 Cal.5th 594 (2018), holding invalid a policy that provided no official reporter in a category of proceedings while permitting privately retained reporters, and observing that the absence of a record is frequently fatal to meaningful review.

143. The defect is aggravated in this case by a feature the policy itself creates: where no reporter attends, the only surviving account of a hearing is a one-page minute order and a proposed order drafted by a participant and transmitted to chambers. The person who advocated a position authored the document memorializing the ruling on it, and no independent record

existed against which that document could be checked by anyone — including the signing judicial officer.

144. Plaintiff seeks a declaration that, where a proceeding may reduce or reallocate a parent's custodial time, the Fourteenth Amendment requires that a verbatim record be made available on the request of a party who is unable to pay for a privately retained reporter; and, in the alternative, an injunction to that effect. He seeks no damages on this Count and no relief from the State treasury.

**COUNT IV**

**Equal Protection — Unequal Administration of a Facially Neutral Standard**

**Fourteenth Amendment — 42 U.S.C. § 1983**

**(Against Defendant Stoner individually for damages; against Defendants Emede and Curran, official capacity, for prospective relief only)**

145. Plaintiff incorporates each preceding paragraph.

146. A law "fair on its face and impartial in appearance" nonetheless violates equal protection where "applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances." Yick Wo v. Hopkins, 118 U.S. 356, 373–74 (1886). Yick Wo requires proof of the pattern of administration, not of anyone's state of mind.

147. Sex-based classifications require an "exceedingly persuasive justification" and cannot rest on "overbroad generalizations about the different talents, capacities, or preferences of males and females." United States v. Virginia, 518 U.S. 515, 533 (1996). Sex-role generalizations about parenting are impermissible even where statistically accurate. Sessions v. Morales-Santana, 582 U.S. 47, 68–73 (2017). Accord Stanley v. Illinois, 405 U.S. 645 (1972); Caban v. Mohammed, 441 U.S. 380 (1979). The domestic relations context confers no immunity from this scrutiny. Orr v. Orr, 440 U.S. 268, 278–79 (1979); Palmore v. Sidoti, 466 U.S. 429, 432–34 (1984).

148. California Family Code § 3040(c) forbids preferring a parent as custodian because of that parent's sex. Plaintiff does not challenge that statute. He alleges it was administered unequally.

149. As to Defendant Stoner, Plaintiff pleads the four paired within-case comparisons in Section VI.I and the documentary evidence in Section VI.J, together with the Arlington Heights factors: the sequence of events, in which the officer who produced a favorable result in March 2023 requested the screening that reversed it eight days after a Bar complaint; the departure from normal procedure in convening an emergency screening on allegations unaccompanied by any professional record while a documented child welfare history in the other household produced none; and the substitution of sex-defined role labels for the neutral designations the Judicial Council prescribes.

150. As to the official-capacity Defendants, Plaintiff seeks prospective relief only, and alleges

existed against which that document could be checked by anyone — including the signing judicial officer.

144. Plaintiff seeks a declaration that, where a proceeding may reduce or reallocate a parent's custodial time, the Fourteenth Amendment requires that a verbatim record be made available on the request of a party who is unable to pay for a privately retained reporter; and, in the alternative, an injunction to that effect. He seeks no damages on this Count and no relief from the State treasury.

**COUNT IV**

**Equal Protection — Unequal Administration of a Facially Neutral Standard**

**Fourteenth Amendment — 42 U.S.C. § 1983**

**(Against Defendant Stoner individually for damages; against Defendants Emede and Curran, official capacity, for prospective relief only)**

145. Plaintiff incorporates each preceding paragraph.

146. A law "fair on its face and impartial in appearance" nonetheless violates equal protection where "applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances." Yick Wo v. Hopkins, 118 U.S. 356, 373–74 (1886). Yick Wo requires proof of the pattern of administration, not of anyone's state of mind.

147. Sex-based classifications require an "exceedingly persuasive justification" and cannot rest on "overbroad generalizations about the different talents, capacities, or preferences of males and females." United States v. Virginia, 518 U.S. 515, 533 (1996). Sex-role generalizations about parenting are impermissible even where statistically accurate. Sessions v. Morales-Santana, 582 U.S. 47, 68–73 (2017). Accord Stanley v. Illinois, 405 U.S. 645 (1972); Caban v. Mohammed, 441 U.S. 380 (1979). The domestic relations context confers no immunity from this scrutiny. Orr v. Orr, 440 U.S. 268, 278–79 (1979); Palmore v. Sidoti, 466 U.S. 429, 432–34 (1984).

148. California Family Code § 3040(c) forbids preferring a parent as custodian because of that parent's sex. Plaintiff does not challenge that statute. He alleges it was administered unequally.

149. As to Defendant Stoner, Plaintiff pleads the four paired within-case comparisons in Section VI.I and the documentary evidence in Section VI.J, together with the Arlington Heights factors: the sequence of events, in which the officer who produced a favorable result in March 2023 requested the screening that reversed it eight days after a Bar complaint; the departure from normal procedure in convening an emergency screening on allegations unaccompanied by any professional record while a documented child welfare history in the other household produced none; and the substitution of sex-defined role labels for the neutral designations the Judicial Council prescribes.

150. As to the official-capacity Defendants, Plaintiff seeks prospective relief only, and alleges

that a standard administered without stated factors, burden, or standard of proof, in proceedings that generate no reviewable record, cannot be shown to be administered neutrally and forecloses the very inquiry by which unequal administration would be detected.

151. Defendants can offer no exceedingly persuasive justification for administering the same requirement by two standards in the same case within one day.

**VIII. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A. On Counts I, II, and IV, compensatory damages against Defendant Stoner in her individual capacity in an amount to be proven at trial, for lost parenting time, out-of-pocket costs of the state proceeding, lost income and lost employment opportunity, emotional distress, and reputational harm;

B. On Counts I, II, and IV, punitive damages against Defendant Stoner in her individual capacity, the conduct pleaded having been undertaken with reckless or callous indifference to Plaintiff's federally protected rights, Smith v. Wade, 461 U.S. 30, 56 (1983);

C. On Counts III and IV, a declaration under 28 U.S.C. §§ 2201–2202 that the Fourteenth Amendment requires, in a proceeding that may reduce or reallocate a parent's custodial time, that a verbatim record be made available on the request of a party unable to pay for a privately retained reporter;

D. On Counts III and IV, in the alternative to paragraph C, prospective injunctive relief against Defendants Emede and Curran in their official capacities, directed solely to the administrative policy described in Section V and to no ruling in any case, requiring that such a record be made available on request;

E. Costs of suit under 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d);

F. Prejudgment and post-judgment interest as allowed by law;

G. Leave to amend to substitute the true names of Does 1–10 when ascertained; and

H. Such other relief as the Court deems just.

Plaintiff seeks no damages, restitution, fees, or other retroactive relief from Defendants Emede or Curran, and no relief payable from the treasury of the State of California. Plaintiff does not seek attorney's fees under 42 U.S.C. § 1988; a pro se litigant may not recover them. Kay v. Ehrler, 499 U.S. 432, 435 (1991). Plaintiff reserves the right to seek fees for the work of any attorney later retained.

**IX. DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable, including all issues of fact underlying Counts I, II, and the damages portion of Count IV.

Dated: 08/07, 2026

Respectfully submitted,

JONATHAN VASQUEZ
Plaintiff in Pro Se